**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** § | **Case No. 18-47063-659** |
| § | |
| **Jason Shawver,** § | **Chapter 7** |
| § | |
| **and** § | |
| § | |
| **Briana Shawver,** § | |
| § | |
| Debtors. § | |
| _____ § | |
| § | |
| **GCAP Holdings LLC,** § | |
| § | |
| Plaintiff, § | **Adv. No. 19-04009-705** |
| § | |
| **Jason E. Shawver, et al.,** § | |
| § | **[Related to Doc. Nos. 1 and 13]** |
| Defendants. § | |

**OPINION AND FINDINGS OF FACT**

On August 27, 2019, the Court held a trial in the Adversary Proceeding docketed as 19-04009-705. For the reasons set forth herein, the Court **ORDERS** that the relief sought by GCAP Holdings, LLC (the "Creditor") be **DENIED** in full.

**I. FACTS**

From December 2016 through November 3, 2018 (the "Petition Date"), Jason Shawver and Briana Shawver (collectively, the "Debtors") owned and operated Elysium Restoration and Design, L.P. as the limited partners ("Elysium"). Debtors owned a 99% interest in the partnership. Elysium's purpose is to perform real estate restoration, construction, and/or renovation work.

1

In or around June 2018, Debtors entered into negotiations with the Creditor for a loan to complete multiple pending real estate renovation and restoration projects. Creditor is a limited liability company located in Brooklyn, New York, which operates as a private equity firm. Vsevold "Steve" Garanin ("CEO") is an investment banker by trade and Creditor's sole owner. According to the CEO's testimony, Creditor usually lends to small businesses in amounts between $15,000 and $25,000. Creditor's ordinary underwriting process includes reviewing three months of business bank statements to create a cash flow profile, conducting a credit profile of the business owners, and inputting the data into the CEO's propriety algorithm. This algorithm takes into account revenue, income, expenses, business type, and seasonality of certain businesses to run a risk assessment. The algorithm computes and produces a funding offer.

The Debtors represented to the Creditor that Elysium was able to repay the Creditor for the loan, including interest. As required by the Creditor's underwriting process, the Debtors submitted a one-page business credit application ("Application") requesting $225,000, although the Debtors and the Creditor dispute how this amount originated. In addition to the Application, the Debtors provided Elysium's bank statements from December 2017—April 2018.

The Creditor began its underwriting process by reviewing Elysium's bank statements and inputting the information into the CEO's algorithm. Based on this evaluation, the algorithm suggested the Application amount requested was too high. In addition, the CEO's analysis determined that the Debtors may not be able to make timely payments. The CEO did not provide any written documentation illustrating this analysis.

The Creditor requested additional information related to Elysium's future cash flows. Understanding the nature of Elysium's business, the Creditor asked for construction contracts and the anticipated revenue stream from those contracts. Elysium responded by providing four signed proposals (the "Elysium Proposals") for renovation and construction work totaling an estimated $520,000. No evidence was submitted by the Creditor that it only considers future revenue streams after the initial Application is reviewed.

Prior to funding, Elysium received payments for completed work on the Elysium Proposals. The Debtors and the Creditor (collectively, the "Parties") stipulated that the following table breaks down the information regarding total contractual amounts and amounts paid prior to the Creditor's loan.

| Contract | Contract Total | Amount Paid Prior to Creditor Loan |
|---|---|---|
| 4068 Botanical | $91,583.75 | $0.00 |
| 3843 McCree | $71,852.40 | $17,513.64 |
| 17883 Blakefield | $194,334.00 | $135,034.00 |
| 4116 Flad | $162,313.20 | $32,500.00 |
| | **$520,083.15** | **$185,107.64** |

One day prior to funding, the Creditor conducted an eight to ten-minute phone call ("Funding Call") with Debtors.

Despite Elysium's historical poor performance, the Creditor and Elysium came to an agreement on June 25, 2018 ("Funding Date"). The CEO testified that he believed the Elysium Proposals represented significant upcoming revenues. However, the Debtors credibly disputed any requirement that the Creditor insisted that the Elysium Proposals could only indicate funds still due.

3

Pursuant to the "Revenue Based Factoring (RBF/ACH) Agreement" (the "Contract"), the Creditor funded $66,000 to Elysium in exchange for forty-two weeks of payments totaling $96,000. Creditor sought 45% return on investment under the Contract. Due to the Creditor's policy, the Debtors personally guaranteed the loan.

The Contract required the Debtors to provide "true, accurate, and complete" financial information "in all respects." Specifically, if the Debtors provided any "false or misleading" information, the Debtors breached the Contract. However, nothing within the contract language barred Elysium from receiving payments on the Elysium Proposals prior to the Contract.

Over the next several months, Elysium suffered unforeseen project delays that restricted anticipated cash flow. As a result, by late October 2018, Elysium struggled to make its payment to Creditor. On November 1, 2018, the Creditor declared the Debtors in default for failure to satisfy the weekly payments. On the Petition Date, the Debtors owed an outstanding debt of $62,000 to the Creditor, pursuant to the Contract (the "Debt").

On the Petition Date, the Debtors filed a joint petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"[1]), thereby commencing the bankruptcy case, Case No. 18-47063-659. On January 28, 2019, the Creditor filed a complaint commencing the adversary proceeding ("Adversary Proceeding"), Case No. 19-04009-705. Therein, the Creditor alleges that the Debtors

---

[1] Unless otherwise indicated, any reference to "section(s)" or "§[§]" shall refer to the indicated section[s] of the Bankruptcy Code.

owe him the Debt that is subject to exception from discharge under §§ 523(a)(2)(A) or 523(a)(2)(B).

## II. PRELIMINARY MATTERS

This Court finds that it has jurisdiction under 28 U.S.C. § 151, 157, and 1334 and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (2016). Venue is proper in this District under 28 U.S.C. § 1409(a). Both the Debtors and the Creditor affirmatively consent to the jurisdiction of this Court.

## III. LAW

### A. Law on the §§ 523(a)(2)(B) and 523(a)(2)(A) Exceptions to Discharge

Pursuant to § 727(b), the Court shall grant a discharge that "discharges the debtor from all debts that arose before the petition date," except from those debts that are specified in § 523. The Creditor relies on two mutually exclusive exceptions. Section 523(a)(2)(B) provides that any debt arising from an intentionally deceitful and materially false "statement in writing … respecting the debtor's … financial condition" upon which the creditor reasonably relied is excepted from discharge. Section 523(a)(2)(A) provides that any debt that arises out of "false pretenses, a false representation, or actual fraud," is excepted from discharge. To prevail on either claim the Creditor must prove each element by a preponderance of the evidence. *In re Nelson*, 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006). The Court analyzes each in turn.

### IV. EXCEPTION TO DISCHARGE PURSUANT TO THE PROVISION OF § 523(a)(2)(B)

Under § 523(a)(2)(B), a debtor may not be granted a discharge from any debt for funds or extension of credit obtained by a written statement "(1) that is materially false; (2) respecting a debtor's financial condition; (3) on which the creditor reasonably relied; and (4) that debtor made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B) (2007); *see also In re Baker*, 419 B.R. 47, 50-51 (Bankr. E.D. Mo. 2009).

### A. Materiality

For purposes of Section 523(a)(2)(B), a statement is materially false if it "paints a substantially untruthful picture of a debtor's financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *In re Bohr*, 271 B.R. 162, 167 (Bankr. W.D. Mo. 2001) (quoting *Meyer v. Dygert (In re Dygert)*, 2000 WL 630833 *1, *21 (Bankr. D.Minn. 2000)). Multiple courts find it "well established that writings with pertinent omissions" may be materially false for purposes of § 523(a)(2)(B). *In re McCleary*, 284 B.R. 876, 886 (Bankr. N.D. Iowa 2002); *see also In re Dammen*, 167 B.R. 545, 551 (Bankr. D.N.D. 1994); *see also In re Bundy*, 95 B.R. 1004, 1008 (Bankr. W.D.Mo. 1989).

Here, the Debtors provided a variety of documentation to support the Application, including the Elysium Proposals. The Creditor maintains that the Elysium Proposals are materially false because the Elysium Proposals fail to accurately represent the Debtors' future cash flows from the corresponding renovation and construction projects based solely on the fact some funds had been received on the Elysium Proposals. The Elysium Proposals stated that the Debtors' estimated payments were in excess of $500,000 for renovation and construction

work on the four projects. However, at the time of funding, the Debtors had already received over one-third of the expected payments, thereby reducing the amount of future receivables by the same.

The Debtors' position is that the Creditor never demanded that the Elysium Proposals totals represented only future receivables. Additionally, the Debtors did not represent the Elysium Proposals total as only future receivables. In *McCleary*, the debtor failed to disclose his outstanding accounts with suppliers, specifically a $6,000 debt, when applying for a substantial bank loan. 284 B.R. at 886. The court there concluded that the bank's decision to approve the loan would not have been affected by knowledge of the outstanding account "[g]iven the size of the loan" and "[the] Debtor's net expenditures." *Id*. Conversely, here, the Debtors received payments amounting to over one-third of the expected $520,000 of receivables. Here, the Creditor's knowledge of the substantial reduction in future receivables may have affected Creditor's decision to lend. Regardless, the already collected receivables are a *pertinent omission* of a type which normally affects the decision to grant credit, because the Creditor specifically asked for the proposals when assessing Elysium's ability to repay. Therefore, the Debtors' omission regarding the amount of future receivables available pursuant to the Elysium Proposals is materially false statement.

The Court **FINDS** the element of materiality is met.

## B. Respecting a Debtor's Financial Condition

A statement about a single asset can be a "statement respecting the debtor's financial condition" under § 523(a)(2) of the Bankruptcy Code. *Lamar, et al., v. Appling*, 138 S.Ct. 1752, 1764 (2018).

7

In *Lamar,* the debtor made a series of oral misrepresentations about the amount of his tax return to his lawyers when the lawyers sought prompt payment. *Id*. at 1757. By the time the case reached the Supreme Court, the issue became whether a statement about a single asset can be a statement respecting the debtor's financial condition. *Id*. at 1758. The Supreme Court held yes. *Id*. at 1764.

The Debtors provided Elysium's bank statements and the Elysium Proposals to the Creditor as evidence of Elysium's past, present, and future financial condition. Although the Debtors did not provide personal bank statements to the Creditor, for purposes of this analysis, the Court ignores, the issue of piercing the corporate veil. Because the Debtors personally guaranteed the debt, the Court will assume statements about Elysium's financial condition sufficiently serves as a statement about the Debtors' financial condition. Additionally, all Parties agreed that the Debtors provided the Creditor with information sufficient to access additional bank records if it so chose prior to the funding.

Here, Elysium's statement about future receivables expected from Elysium Proposals, whether viewed as one asset or separate assets from individual contracts, satisfies the element of a statement "respecting a debtor's financial condition" under § 523(a)(2)(B). *Id*.

The Court **FINDS** the element of a statement respecting a debtor's financial condition is met.

### C. Creditor's Reasonable Reliance

The Court must look at the reasonableness of a creditor's reliance "in light of the totality of the circumstances." *First Nat'l Bank of Olathe, Kansas v. Pontow*, 111 F.3d 604, 610 (8th Cir. 1997) (quoting *Coston v. Bank of Malvern (In re Coston)*,

8

991 F.2d 257, 261 (5th Cir. 1993) (en banc)); *see also In re Keim*, 236 B.R. 400, 402-03 (B.A.P. 8th Cir. 1999). Among other things, a court may consider if there were "red flags" that would have alerted an ordinary prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representation. *First Nat'l Bank*, 111 F.3d at 610; *Keim,* 236 B.R. at 403. Additionally, "the stringency of the reasonableness standard varies with the lender's sophistication." *Bundy*, 95 B.R. at 1009.

After reviewing the totality of the circumstances, substantial evidence supports that the Creditor unreasonably relied on the statement within the Elysium Proposals for the Creditor's proposition that Elysium Proposals only represent future revenue. The Debtors provided Elysium's bank statements in conjunction with the Elysium Proposals. The statements provided contain record of deposits corresponding to completed work on the Elysium Proposal jobs. The Creditor need only inquire as to the origin of the deposits to discover incoming payments for work completed on the Elysium Proposals. Additionally, Creditor failed to procure a basic balance sheet and financial statement for Elysium prior to funding. Further, no evidence was produced that such financial documents were requested and not provided. To the contrary, the Debtors credibly testified that if requested, they would have produced such documents. Had these core financial documents been obtained prior to the Funding Date, the Creditor would have noticed a discrepancy regarding the outstanding accounts receivable at funding. Instead the CEO, a sophisticated financial professional, used his own proprietary algorithm that takes into account revenue, income, expenses, business type, and seasonality of certain businesses to run his risk assessment. The CEO repeatedly described the transaction as "borderline" in his testimony. That description gives the Court pause, because it

indicates the CEO recognized the risk and proceeded against his company's ordinary practices. Despite the "borderline" nature of this deal, the Creditor—who typically lends much smaller amounts of approximately $15,000 to $20,000, to small businesses like Elysium—decided to deviate from its ordinary lending practices and lent $66,000.

The Creditor ignored some obvious red flags. The Creditor conducts business with general contractors like Elysium. Due to this, the Creditor knows construction contractors often receive money up front and payment for work as the work is completed. Here, for example, one of the four Elysium Proposals provided that $58,300 be due at signing of the proposal. This proposal was accepted on January 21, 2018 by Elysium's client. The Creditor funded Elysium on June 25, 2018. Through minimal investigation and basic due diligence, the Creditor ought to have read the proposal contract the Creditor supposedly relied so heavily upon and recognized that a large deposit had been due—and likely paid—nearly five months prior to funding.

Finally, despite Elysium's history of poor financial performance, the Creditor lent nonetheless. An ordinary prudent lender likely requires basic business accounting documents like financial statements and balance sheets when evaluating lending opportunities. However, the Creditor failed to even request such documents, overlooked historical poor performance, and conducted less than minimal investigation into the documents Elysium provided, all in an effort to chase a 45% return on investment within forty-two (42) weeks. With great reward comes great risk.

The Court **FINDS** the element of reasonable reliance is not met.

## D. Debtors' Intent to Deceive

A debtor's state of mind, including whether a debtor held the intent to deceive is exceedingly difficult to produce, therefore, creditors may present circumstantial evidence for the Court to infer the intent. *In re Lindsey*, 443 B.R. 808, 815 (B.A.P. 8th Cir. 2011). "When the creditor introduces circumstantial evidence proving the debtor's intent to deceive, the debtor cannot overcome [that] inference with an unsupported assertion of honest intent." *Id.* "The focus is, then, on whether the debtor's actions appear so inconsistent with [his] self-serving statement of intent that the proof leads the court to disbelieve the debtor." *Id.*

Although the Court finds the Debtors' omission regarding the future receivables to be materially false, the Debtors failed to act with the requisite intent to deceive the Creditor. Upon the Creditor's request, the Debtors furnished the Elysium Proposals as evidence of ability to repay. However, nothing in the Elysium Proposals' estimated revenue totals suggest that all revenue is attributable to future receivables. To the contrary, at least one of the proposals, which made up the lion's share of the contested receivables collected prior to funding, outlines payment terms that describe a deposit due at signing and progress payments. This agreement occurred five months before the Funding Date.

The Debtors provided the Elysium Proposals, as requested, so that the *Creditor* may evaluate risk and underwrite. According to credible testimony, the Debtors stated that the Debtors provided the Elysium Proposals upon the Creditor's request with no intent to deceive. Now, the sophisticated and experienced Creditor claims to have been bamboozled by the Elysium Proposals reduction in expected receivables. Given the surrounding circumstances, the Court does not find the Debtors' actions of providing the Elysium Proposals, even without identifying the

11

amount of payables collected "so inconsistent" that leads the Court to disbelieve the Debtors' stated intentions. In addition to the Elysium Proposals, the Creditor reviewed bank statements and the CEO conducted his own assessment of Elysium's loan eligibility. Specifically, given the information in possession of the Creditor, the Court is unsympathetic to the Creditor that fails to perform minimal due diligence on a risky loan then prays for relief when the deal sours. Borderline deals, by definition, lead to uncertain results.

The Court **FINDS** the element of debtor's intent to deceive is not met.

The Creditor failed to show by a preponderance of the evidence that each and every element of § 523(a)(2)(B) was met. Therefore, the Court **FINDS** the Debt not excepted from discharge under § 523(a)(2)(B).

## V. EXCEPTION TO DISCHARGE PURSUANT TO THE PROVISION OF § 523(a)(2)(A)

Independently, the Court considers the argument that the Debt should be excepted from discharge under § 523(a)(2)(A). By the plain language of § 523(a)(2)(A), the debt in question must be the result of "false pretenses, a false representation, or actual fraud." To prevail on a claim for exception to discharge under § 523(a)(2)(A), the Creditor must prove by a preponderance of the evidence that: (1) the Debtors made a false representation; (2) the Debtors knew the representation was false at the time; (3) the Debtors made the representation with the intent to deceive the Creditor; (4) the Creditor justifiably relied on the representation; and (5) the Creditor sustained a loss due to the representation. *In re Grause*, 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000).

12

The alleged oral misrepresentation of concern to the Court is that the Debtors orally misrepresented the amount of expected future receivables under the Elysium Proposals. Allegedly, this misrepresentation occurred during an eight to ten-minute phone call, referred to by the Creditor as the Funding Call. According to the Creditor, the Debtors "indicated" Elysium Proposal payments were "for future work." Debtors deny this allegation and maintain Debtors never represented that amounts on Elysium Proposals encompassed only future receivables. The Funding Call occurred one day prior to the Funding Date.

### A. False Representation

"To qualify as a false representation or false pretenses under § 523(a)(2)(A), the statement must relate to present or past fact." *In re Conlin*, 294 B.R. 88, 100 (Bankr. D.Minn. 2003) (quoting *Gadtke v. Bren (In re Bren)*, 284 B.R. 681, 690 (Bankr. D.Minn. 2002)). "A debtor's silence regarding a material fact may constitute a false representation" under § 523(a)(2)(A). *In re Moen*, 238 B.R. 785, 791 (8th Cir. B.A.P. 1999).

The Court has serious doubts about the depth of conversation between the Creditor and the Debtors on the Funding Call. The Creditor's business practice of the Funding Call seems almost entirely administrative in nature. Based on the lack of detailed testimony, this Court is skeptical that the Creditor asked the Debtors about the Elysium Proposals' future receivables during the Funding Call.

The Debtors' silence regarding the material fact of accepting payments on the Elysium Proposals prior to the Funding Date may constitute a false representation. As the Eighth Circuit opined in *Van Horne,* "a creditor has the right to know those facts touching upon the essence of the transaction." *In re Van Horne*, 823 F.2d 1285,

13

1288 (8th Cir. 1987). The Court believes the prior collection of the Elysium Proposals' expected future receivables would "touch" upon the Creditor's decision to lend and withholding that information from the Creditor is a false representation.

However, the Court notes the timing and nature of the Funding Call. The only evidence by the Creditor is testimony from the CEO that the Debtors "indicated" Elysium Proposals totals were for future work. However, very credible testimony by the Debtors refutes the Creditor's evidence by stating the Debtors "never told anyone at [the Creditor] that [Elysium Proposals] were for only future revenue." Given that the Funding Call was under ten minutes and occurred the day before funding, the Court determines that the Creditor fails to satisfy its burden of proof under the preponderance of the evidence standard, because the Court doubts substantive underwriting questions arose on a call that likely discussed little more than the Debtors' personal and banking information. Further, the only evidence supporting the Creditor's position comes from the testimony of the CEO, but it was easily refuted by the more credible testimony of the Debtors.

The Court **FINDS** the element of debtor's false representation is not met.

### B. Knowledge of Falsity

"A false representation made under circumstances where a debtor should have known of the falsity is one made with reckless disregard for the truth, and this satisfies the knowledge requirement." *Moen*, 238 B.R. at 791 (quoting *In re Duggan*, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)). In determining Debtors' knowledge of the falsities, "the Court must consider the knowledge and experience of the debtor." *Id*.

Ordinarily, once the Court determines no false representation occurs, the rest of the analysis would be superfluous. However, the Court will complete the analysis for a complete record. The question of fact is whether the Debtors should have known that the Creditor requested information about the Elysium Proposals solely because of the Creditor's interest in the Elysium Proposals' future receivables. As stated before, the Court is not convinced that the Creditor articulated its underwriting purpose for the Elysium Proposals during the Funding Call.

The Debtors were experienced borrowers. The evidence provided indicates the Debtors engaged in many borrowing transactions, even transactions with the Creditor's competitors. The Debtors' propensity for "cash-flow borrowing" implies that the Debtors may have known the Creditor's interest in the Elysium Proposals revolved upon the future cash flow of the contracts.

If the Debtors sat in silence when asked about the Elysium Proposals expected receivables on the Funding Call, likely knowing that disclosing the receipt of payments on the Elysium Proposals thwarts the transaction, then the Debtors' false representation satisfies the knowledge requirement. However, for reasons already stated, the Court found insufficient evidence that the Funding Call addressed the subject of Elysium Proposals' future receivables. The Debtors previously provided written copies of the Elysium Proposals for Creditor to evaluate during underwriting. By the time the Funding Call occurred, the Creditor had made the decision to lend and Debtors would have no reason to know that the Elysium Proposals were still a concern of the Creditor.

Based on the lack of evidence and keeping in mind our standard, the Court finds that the Creditor fails to satisfy the Debtors' knowledge requirement.

The Court **FINDS** the element of knowledge of falsity is not met.

### C. Intent to Deceive

"Because direct proof of intent is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *In re Schnuelle*, 441 B.R. 616, 622 (8th Cir. B.A.P. 2011). "When the creditor introduces circumstantial evidence proving the debtor's intent to deceive, the debtor cannot overcome that inference with an *unsupported* assertion of honest intent." *Id.* (emphasis added). The focus is on whether the debtor's actions "appear so inconsistent with [debtor's] self-serving statement of intent that the proof leads the court to disbelieve the debtor." *Id.*

During the Funding Call, the Creditor maintains that the Debtors indicated no payments had been received for Elysium Proposals. Given the length of the call and proximity to the Funding Date, the Court doubts the future receivables of the Elysium Proposals were discussed. The Creditor failed to introduce any evidence and the CEO did not testify that there was any particular checklist of topics covered in the Funding Call which would have triggered discussion about the future receivables. Further, the Creditor did not state that it was part of the ordinary course of business to ensure only receivables are considered. The Court, by the preponderance of the evidence, finds it more likely that the Funding Call was administrative and did not discuss the substantive details of the underwriting calculation.

The Debtors cannot intend to deceive without knowingly misrepresenting the amount of receivables collected on the Funding Call. Even if the Debtors failed to disclose the Elysium Proposals receivables on the Funding Call, the Debtors provided the Creditor with the written Elysium Proposals. In this case, the Debtors

16

can support their assertion of honest intent and substantially weaken the Creditor's argument otherwise, because they provided all requested documentation—the Elysium Proposals and bank statements—for review to the Creditor prior to the Funding Call. Moreover, the Parties agree that banking information sufficient to check real-time balances was provided during the Funding Call demonstrating the openness of the Debtors with the Creditor. The Creditor fails to show by a preponderance of the evidence that the Debtors intended to deceive anyone on the Funding Call.

The Court **FINDS** the element of knowledge of intent to deceive is not met.

### D. Creditor's Justifiable Reliance

"[T]he standard for showing justifiable reliance . . . is fairly low." *In re Guske*, 243 B.R. 359, 363 (8th Cir. B.A.P. 2000) (citing *Sanford Institution for Savings v. Gallo*, 156 F.3d 71, 74 (1st Cir. 1998). "[A] party may justifiably rely on a misrepresentation even when [that party] could have ascertained its falsity by conducting an investigation." *Id*. When the alleged victim knows the misrepresentation to be false, or the misrepresentation is obviously false reliance cannot be justified. *Id.* Additionally, "falsity which could have been discovered by senses during a cursory glance may not be relied upon." *Id.* A creditor is not justified in his reliance when there "are any warning signs ... either in the documents, in the nature of the transaction, or in the debtor's conduct or statements." *Id*. at 363-364.

The Creditor's testimony that the Debtors indicated Elysium Proposal payments were for future work, without more, is not enough to meet the Creditor's burden of proving the Creditor justifiably relied on the oral statement, particularly considering the Funding Call appears to be little more than an administrative formality rather than a substantial part of the Creditor's underwriting process. In

17

addition, the Debtors deny the Creditor's allegation and the record reveals no other evidence supporting false oral representations because the Creditor and the Debtors barely spoke prior to Funding Date.

The Debtors' representation aside, Debtors provided the Elysium Proposals and bank statements to the Creditor in order to assess Elysium's cash flow prior to the Funding Call. By this time, the Creditor analyzed the transaction and understood the risks. By the Creditor's own testimony, the Creditor was acutely aware of the "borderline" nature of this transaction and had reviewed the Elysium Proposals to satisfy Creditor's concerns. Despite what the Debtors *may* have represented, one reading of the Elysium Proposals clearly suggests that Debtors had received payments for work well in advance of this transaction.

The Court **FINDS** the element of creditor's justifiable reliance is not met.

### E. Causation

The evidence and the Court's already articulated findings do not support the Creditor's assertion that the loss occurred because of fraud on the Debtors' part. Therefore, the Court need not address the element of causation because the Creditor fails to satisfy by a preponderance of the evidence required elements of § 523(a)(2)(A).

The Creditor failed to show by a preponderance of the evidence that each and every element of § 523(a)(2)(A) was met. Therefore, the Court **FINDS** the Debt is not excepted from discharge under § 523(a)(2)(A).

## VI. CONCLUSION

For failure to sustain its burden of proof the Court **ORDERS** that all of the relief sought by the Creditor be **DENIED**.

The Court **ORDERS** that judgment be rendered in favor of the Debtors on the Claims arising under § 523(a)(2)(B). For the reasons set forth herein, the Court **ORDERS** that judgment be rendered in favor of the Debtors on the Claims arising under § 523(a)(2)(A). A separate judgment will be entered pursuant to federal rules.

DATED: March 23, 2020  CHARLES E. RENDLEN, III
St. Louis, Missouri 63102  U.S. Bankruptcy Judge
mtc

Copy Mailed To:

**Patrick Tyler Connor**
Riezman Berger, P.C.
7700 Bonhomme Ave
7th Floor
Clayton, MO 6310

**Henry Paul Elster**
The Elster Law Office, LLC
101 S. Hanley Road, Suite 1280
Saint Louis, MO 63105

**Kathryn Allene Klein**
Riezman Berger
7700 Bonhomme Ave., Fl. 7
St. Louis, MO 63105

19